UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL YEAGER | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CAUSE OF ACTION NO. |
| | § | 1:19-cv-1197 |
| DUSTY JESTER, in his individual capacity | § | |
| | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Michael Yeager brings this 42 U.S.C. § 1983 case against Defendant Jester, an officer of the Austin Police Department, because Jester used brutal excessive force against Plaintiff while falsely arresting him.

**I.   PARTIES**

1. Plaintiff Michael Yeager is a resident of La Mesa, California.

2. Defendant Dusty Jester is a police officer with the Austin Police Department, and is sued in his individual capacity for compensatory and punitive damages. He can be served with process at 715 E. 8th Street, Austin, TX 78701. At all relevant times, Officer Jester was acting under color of law as an Austin Police Department officer.

**II.   JURISDICTION AND VENUE**

3. This Court has federal question jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. § 1331 and 1343.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), as all relevant events occurred in this division, and all Defendants reside in this state.

## III.    FACTS

5. Plaintiff Yeager was the victim of an attempted robbery.

6. Despite this, Defendant Officer Jester brutally tackled Yeager, slammed Yeager's face into a concrete sidewalk, and violently shocked Yeager in the back with his police taser.

7. Then, to cover up his excessive force, Jester had Yeager arrested wholly without probable cause, causing Plaintiff Yeager to be falsely arrested, charged, and imprisoned.

8. Yeager and his girlfriend were visiting Austin for the weekend. After attending a University of Texas football game at Darrell K. Royal Stadium, they went out in downtown Austin.

9. Yeager and his girlfriend subsequently returned to his car, which they had parked in the lot underneath the I-35 overpass near Eleventh Street.

10. While waiting for the light to change to cross the I-35 frontage road, several men attempted to rob the couple.

11. Several police officers, including Jester, responded to the scene, and separated the would-be robbers from Yeager and his girlfriend.

12. One of the officers on the scene took Yeager aside, and walked with him approximately 30 yards away from the detained robbers to take Yeager's statement to assist in the prosecution of the robbers.

13. Yeager was completely calm and cooperative with the officer.

14. Yeager stood calmly a few feet from the investigating officer, with his hands in his pockets as he explained to the investigating officer what had happened.

15. Meanwhile, Officer Jester stood near the robbers who were now handcuffed and detained on the sidewalk. The robbers were completely under control, and fully restrained.

16. Jester saw his fellow officer speaking calmly with Yeager, approximately 30 yards away.

17. Suddenly, and without any provocation, Jester began sprinting directly at Yeager.

18. Jester tackled Yeager to the ground, slamming Yeager's head on the concrete.

19. Jester pummeled Yeager, pulled out his taser and shocked Yeager in the back.

20. Yeager suffered a concussion, separated shoulder, broken nose, fractured thumb, and lacerations that required 27 stiches to close from Jester's ruthless assault. Yeager's Longhorns t-shirt was soaked with his own blood after Jester finished assaulting him.

21. Then, though no facts supported any criminal charge, Jester and other officers at the scene charged Yeager with "evading arrest," and took him to the Travis County jail, where Yeager was imprisoned overnight.

22. The completely falsified and trumped up criminal charge was eventually dismissed after Yeager retained criminal defense attorneys.

23. As a result of the false arrest, Yeager lost his job, even though the charges were later dismissed. The false arrest continues to impair Yeager's ability to find similar work.

24. Upon information and belief, Jester still has not been disciplined for his conduct with Yeager.

### IV.    CAUSES OF ACTION

**A. FOURTH AND FOURTEENTH AMENDMENT EXCESSIVE FORCE**

25. Defendant Jester, while acting under color of law, brutally attacked, punched, and tased Plaintiff Yeager when Yeager posed no danger to anyone, and was cooperating with the police.

26. Jester's use of force was wholly excessive to any conceivable need, objectively unreasonable in light of clearly established law, and directly caused Yeager to suffer serious

3

injuries. Therefore, Jester's actions violated Yeager's clearly established Fourth Amendment right to be free from excessive force and unreasonable seizure.

27. As a direct and proximate result of Jester's actions, Yeager suffered and continues to suffer significant injuries.

### B. Fourth and Fourteenth Amendment False Arrest and Deliberate Fabrication

28. Furthermore, Defendant Jester caused Yeager to be arrested for evading arrest, even though he knew (as any reasonable officer in his position would have known), that he lacked probable cause to make such an arrest.

29. Jester deliberately fabricated material information that caused Yeager to be falsely charged with evading arrest, and arrested Plaintiff. Jester's conduct was shocking, objectively unreasonable, and plainly incompetent.

30. Jester caused Yeager to be arrested on charges he knew were not supported by the law or the evidence, and failed to establish probable cause.

31. Jester's conduct was objectively unreasonable, violated Yeager's clearly established right to be free from false arrest on deliberately fabricated charges, and proximately caused Plaintiff to suffer damages. Accordingly, Jester is liable to Yeager for compensatory and punitive damages under 42 U.S.C. § 1983.

32. Jester was acting under color of law at all relevant times.

### V.   Damages

33.   Plaintiff Yeager seeks the following damages:

   a.   Past and future lost wages and loss of earning capacity;

   b.   Past and future physical pain;

   c.   Past and future mental anguish;

d. Past and future impairment;

e. Past and future disfigurement;

f. Past and future medical expenses;

g. Attorneys' fees, including costs, expert fees, and attorneys' fees pursuant to 42 U.S.C. § 1988;

h. Past and future damages for injury to Plaintiff's character and reputation;

i. Pre-judgment and post-judgment interest at the highest rates allowable under the law;

j. All other compensatory and/or general damages to which Yeager is entitled under state or federal law; and,

k. Punitive damages in the highest amount allowed by law.

## VI.   Jury Demand

34. Plaintiff respectfully requests a trial by jury.

## VII.   Prayer for Relief

35. To right this grave injustice, Plaintiff requests the Court:

   a. Award compensatory and punitive damages to the Plaintiff, against Defendant;

   b. Award Plaintiff costs, including expert fees and attorneys' fees pursuant to 42 U.S.C. § 1988;

   c. Award pre-judgement and post-judgment interest at the highest rate allowable under the law; and,

   d. Award and grant such other just relief as the Court deems proper.

Dated: December 10, 2019.

Respectfully submitted,

**EDWARDS LAW**
1101 East 11th Street
Tel.  512-623-7727
Fax.  512-623-7729

By     /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
jeff@edwards-law.com
SCOTT MEDLOCK
State Bar No. 24044783
scott@edwards-law.com

**ATTORNEYS FOR PLAINTIFF**